JOHN T. HENDRICKS, Appellant, *v.* HURIN M. CLEMENTS,
Doing Business under the Trade Name of CLEMENTS & SON,
Respondent.

First Department, February 4, 1921.

Master and servant — action for wrongful discharge — contract of
employment contained in letter to plaintiff and written acceptance
— parol evidence inadmissible to show that contract was not to
become effective as to term of employment till plaintiff had demon-
strated his ability — charge permitting jury to find that written
instrument did not embrace real contract erroneous.

In an action to recover damages for wrongful discharge in which it appeared
that the contract of employment consisted of a clear, positive and unam-
biguous offer by the defendant to employ the plaintiff for three years at
a stated salary and a percentage of profits, and an equally clear and unam-
biguous letter from the plaintiff to the defendant accepting the offer,
it was error for the court to permit the defendant to introduce parol evi-
dence to. show that said correspondence was tentative merely and that
it was the intention of the parties later, and after the plaintiff had demon-
strated his ability, to enter into a three-year contract.

It was likewise error for the court to so charge the jury as to permit it to
find that the written instruments on which the plaintiff relied did not
embrace the real contract between the parties.

APPEAL by the plaintiff, John T. Hendricks, from a judgment
of the Supreme Court in favor of the defendant, entered in
the office of the clerk of the county of New York on the 25th
day of March, 1920, upon the verdict of a jury, and also from
an order entered in said clerk's office on the 2d day of Decem-
ber, 1919, denying plaintiff's motion for a new trial made upon
the minutes.

*F. C. Nicodemus, Jr.,* of counsel [*Lawrence Greer* and *H.
Brua Campbell* with him on the brief; *Pierce & Greer*, attorneys],
for the appellant.

*Hector M. Hitchings,* for the respondent.

MERRELL, J.:

This action is brought by the plaintiff to recover damages
which he claims to have sustained by reason of his wrongful

discharge by defendant, his employer. Plaintiff claims under a written contract which he alleges he entered into with the defendant on or about June 16, 1917. At that time the defendant, a resident of Philadelphia, in the State of Pennsylvania, was engaged in the sale of linseed oil, representing a large producer of that commodity. Defendant was also the American representative of the Dutch East India Company, acting as its sole agent for the sale in America of cocoanut oil and other products of said company. Owing to the European war then in progress the output of the Dutch East India Company was largely diverted to the United States, via the Pacific coast ports and the Panama canal. The defendant was desirous of obtaining the services of a representative in the city of New York to take charge of defendant's linseed oil and other business at New York. Defendant, early in the year 1917, entered into negotiations with the plaintiff with a view of securing the latter's services as such New York representative. Plaintiff, at that time, resided at San Francisco, Cal., and occupied a position of responsibility as traffic manager of the Western Pacific Railway Company. At defendant's request and upon his suggestion to the plaintiff that a business arrangement might be made to plaintiff's substantial advantage, plaintiff came east and negotiations followed with respect to plaintiff's entering defendant's service. After some considerable negotiations, on June 8, 1917, the plaintiff, who was then at Philadelphia, Penn., made a written proposition to the defendant in effect offering to act as defendant's representative with reference to the business of the Dutch East India Company in the United States, and that plaintiff would also act as defendant's employee in defendant's other general oil brokerage and commercial business at a compensation of $15,000 per annum, payable monthly, plus ten per centum of the net profits of the business, payable quarterly. In his proposition the plaintiff specified that the arrangement should be for the period of five years, unless by further agreement between the parties the same might be canceled and either a copartnership formed or a corporation organized to handle and continue defendant's said business, in which partnership or corporation plaintiff would expect to participate. The defendant did not

accept such proposition of the plaintiff, but three days later, on June 11, 1917, made a counter-proposition to the plaintiff, in writing, as follows:

" PHILADELPHIA, *June* 11*th*, 1917.

" Mr. J. T. HENDRICKS,

          " San Francisco, Cal.:

" DEAR SIR.— Referring to our conversation of today, we will be very glad to enter into a business arrangement with you on the following basis:

" We will pay you a salary of $12,000 per annum, and give you an interest of 10% in the net profits of our business at New York and Philadelphia, payable quarterly each year.

" On the Linseed Oil business in New York, instead of paying you 10% profit, we will pay you 50% of the net profits of the Linseed Oil business in the New York territory. We will also enter into a contract with you making this agreement binding for three years.

" We would like very much to have a reply from you prior to July First, 1917.

          " Yours very truly

                    " CLEMENTS & SON,

                              " H. M. CLEMENT."

This written proposition was either delivered to the plaintiff personally by the defendant or was mailed to and received by the plaintiff at San Francisco. On June 16, 1917, the plaintiff, in writing, accepted defendant's proposition. Plaintiff's written acceptance was embodied in the following letter, which was received by the defendant:

          " J. T. HENDRICKS,
          " San Francisco.

                    "*June* 16, 1917.

" Messrs. CLEMENTS & SON,
          " 1040 Widener Building,
                    " Philadelphia, Pa.:

" GENTLEMEN.— Referring to yours of June 11th, by Mr. H. M. Clements, I beg to advise that after reflection I will be glad to accept the proposition which you set forth and you may consider this letter as my acceptance and approval thereof.          Very truly yours,

                    " J. T. HENDRICKS."

Upon receipt thereof the defendant, on June 23, 1917, wrote the plaintiff expressing great happiness that the latter had decided to join the defendant in business, and expressing in the most sanguine terms defendant's confidence in the possibilities and future success of their enterprises. Defendant, in this letter, stated that he would be very happy if the plaintiff could make arrangements to come east by the fifteenth of August and familiarize himself with the details of the business. Plaintiff soon after in the latter part of July, severed his business connections in the west and, accompanied by his wife, came east to take up his new duties.

Defendant testified that he saw plaintiff at Atlantic City, where the plaintiff had taken his wife to recuperate, the latter part of July, and then told the plaintiff that as he had gone through a good deal with his wife and the weather was very hot, if he did not want to he need not come to New York immediately, but to take a few days' rest. Defendant testified that the plaintiff did not, in fact, report to New York until the sixth or seventh of August, but that his salary dated from August first.

Plaintiff at once took up his duties at the New York office, but the evidence would seem to indicate that under plaintiff's direction defendant's business in the city of New York did not prosper satisfactorily to the defendant. Considerable criticism of the plaintiff was indulged by the defendant, culminating in written communications and telephonic conversations wherein defendant severely took the plaintiff to task for failure to put the business upon a paying basis. Finally, upon December 28, 1917, the defendant wrote plaintiff at length criticising his work and the manner in which he discharged his duties as defendant's New York representative. On February 4, 1918, defendant again wrote plaintiff of his disappointment in the existing conditions. On February 8, 1918, plaintiff replied by letter stating to the defendant that he certainly would be unwilling to continue for any protracted period a relation with the defendant which was not mutually satisfactory, and that he would endeavor as soon as practicable to make other connections and to relieve the defendant from his obligations under their contract. Following plaintiff's entry upon defendant's service under said contract he was paid

a salary of $1,000 for the months of August, September, October, November and December, 1917, and January, 1918. In his letter to the defendant of February 8, 1918, the plaintiff also called attention to the fact that defendant's Dutch East India business had been a very profitable one and that under the terms of their contract the defendant was bound to account to plaintiff for ten per cent of the profits on that business both in New York and Philadelphia, and stated that two quarterly periods had passed and that thus far the defendant had not accounted. This letter of the plaintiff's seems to have precipitated the break between the parties. Upon its receipt defendant called plaintiff upon the telephone and a conversation, very heated on the part of the defendant, ensued, wherein the defendant became more or less abusive toward the plaintiff. On February 12, 1918, at the suggestion of the defendant, the parties met at the Biltmore Hotel in New York city with a view of reaching an understanding. Defendant testified that he then charged the plaintiff with having made a miserable failure of their business enterprise and, finally, becoming very angry with the plaintiff, ordered him from the room, with which command plaintiff complied. On the day following plaintiff wrote defendant expressing disappointment at the result of the Biltmore interview, and suggesting that inasmuch as defendant had requested the same, plaintiff had assumed that the defendant had determined to carry out his obligations under his letter of June 11, 1917, and expressed a willingness on his, plaintiff's, part to continue in the future as in the past to fulfill all obligations on his part; but as defendant had refused to permit plaintiff to do so it became incumbent upon him to pursue his legal remedies. Soon thereafter the present action was commenced.

Defendant, answering the plaintiff's complaint, admitted the making of an arrangement with plaintiff but which defendant claimed was partly oral and partly written, and that the letter of June 11, 1917, from defendant to plaintiff, and plaintiff's reply thereto June 16, 1917, did not make the complete contract between the parties, but that the contract into which they entered was to be thereafter put into definite form. Defendant in his answer also alleged that plaintiff, in his conduct of defendant's business, was wholly inefficient and

that plaintiff's service was without value and without results to the defendant. Defendant further alleged in his answer that plaintiff had voluntarily left his employ and had breached and violated his contract with the defendant.

The jury upon the trial rendered a verdict in favor of the defendant, upon which the judgment appealed from was entered.

The plaintiff seeks reversal of the said judgment upon this appeal upon the ground of error committed at the trial. Under objection and exception of plaintiff's counsel, defendant was permitted to give parol evidence tending to show that the letter from defendant to plaintiff of June 11, 1917, and plaintiff's letter to defendant of June 16, 1917, upon which plaintiff bases his action, did not embrace the real contract between the parties. Upon the trial the defendant was permitted to introduce parol evidence to the effect that there was an oral understanding between the parties that the provision of the contract stipulating for a definite three years' term was not to become effective until plaintiff had served a six or seven months' apprenticeship during which he should demonstrate his ability to make a success of the business. In permitting such parol proof to vary the terms of the written contract between the parties, I think the trial court clearly erred. The law is too well settled to require discussion or the citation of authorities that all previous negotiations between the parties to a contract are superseded by and are deemed to be embodied in the written instrument itself when finally executed, and evidence of talk or negotiations between the parties to a valid instrument in writing, either prior to or at the time of its execution, is inadmissible to vary or contradict its terms. The only exceptions to this general rule are where through fraud, want of consideration or otherwise, no contract really can be said to exist. In such case parol evidence may be given which may effect a destruction of the written instrument. The effect of such parol evidence would be to show that no contract, in fact, was made. Parol evidence is also admissible in cases where the written contract is upon its face ambiguous or incomplete. In such case parol evidence is permissible, not to contradict or vary the terms of the written contract, but to explain and clarify the same and to complete the agree-

First Department, February, 1921.    [Vol. 195.

ment of which the writing is but a part. But before parol evidence may be received with reference to a written contract, it must clearly appear that the contract itself is incomplete and it must further appear that the parol evidence sought to be given is entirely consistent with and not contradictory of the writing. (*Thomas* v. *Scutt*, 127 N. Y. 133; *Wightman* v. *New York Life Ins. Co.*, 119 App. Div. 496.)

In the case at bar we have presented a clear, unambiguous and positive offer on the part of the defendant to employ the plaintiff for three years at a salary of $12,000 per annum, together with an interest of ten per centum in the net profits of defendant's business in New York and Philadelphia, payable quarterly each year, and, further, a one-half interest in the net profits of defendant's linseed oil business in the New York territory. In acceptance of such written offer we have the clear and unambiguous letter from plaintiff to defendant of June 16, 1917, stating that the plaintiff accepted the latter's proposition. While the defendant upon the trial contended that the said correspondence passing between the parties was tentative merely, and that it was the intention of the parties later, and after plaintiff had demonstrated his ability as a salesman, to enter into the three-year contract, the evidence does not disclose that any further attempt was made to amplify the plain and apparently complete written contract expressed through such correspondence. Soon after August 1, 1917, pursuant to defendant's written request, plaintiff entered upon the discharge of his new duties, his salary dating from August 1, 1917. He was thereafter paid his salary of $1,000 a month and no suggestion was made but that the written communications between the parties fully expressed their contract, until plaintiff made claim to share in the net profits of defendant's business enterprises pursuant thereto. Not only must defendant's letter to plaintiff of June 11, 1917, offering plaintiff employment upon the terms therein specified, which were later accepted by the plaintiff in writing, be deemed to embody all talk and negotiations between the parties prior and at the time of said offer and acceptance, but under the very terms of defendant's said letter reference is made to a conversation occurring that day between the parties, and referring to such conversation the defendant states that " We will be very glad

to enter into a business arrangement with you on the following basis:" Thus, so far as anything to the contrary appears, defendant's letter of June eleventh, upon its face, embraced all prior negotiations between the parties. I am of the opinion that the evidence does not present a case where parol evidence may be admitted to vary and contradict the terms of the plain written contract into which the parties entered, and that, therefore, the trial court erred in allowing the defendant to introduce such evidence. Plaintiff was manifestly prejudiced by the introduction of such testimony.

Under the charge of the court the jury was permitted to find that the written instrument upon which the plaintiff relied did not embrace the real contract between the parties. To the court's instruction in this respect the plaintiff duly excepted, and I think thereby error is also presented requiring a reversal of the judgment herein.

The judgment and order appealed from should be reversed and a new trial granted, with costs to the appellant to abide event.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.