(158 App. Div. 628.)

## CUPPY v. STOLLWERCK BROS., Inc.

(Supreme Court, Appellate Division, First Department.   November 7, 1913.)

1. MASTER AND SERVANT (§ 8*)—CONTRACT OF EMPLOYMENT—TERM.

Acceptance of a proposition for employment at a specified rate per year is not an employment for a year but merely at will.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 8–10, 17; Dec. Dig. § 8.*]

2. MASTER AND SERVANT (§ 80*)—EMPLOYMENT—CONTRACT—CONSTRUCTION.

Plaintiff, while in defendant's employ, became dissatisfied with his arrangement and on December 16th made a proposition for increased compensation to date from January 1, 1910. On January 3d he cabled defendant asking confirmation of the agreement and added, "Twelve months also one authority." In reply he received a cablegram that his letters had been answered and that he would have "authority within certain limits." He thereupon cabled that, if defendant would not agree to abide by the conditions of letters specifying "twelve months," he offered his resignation and requested its acceptance. In reply to this on January 7th, defendant stated that it wished to see plaintiff satisfied, working with enthusiasm, and that it agreed to plaintiff's proposals for 12 months, subject to conference, according to plaintiff's decision with defendant's vice president, who was expected to arrive in the United States on the 25th, to which plaintiff replied that he would remain on the terms of his previous letters. *Held*, that his letter of December 16th, referred to, having contained a proposition that unless plaintiff received a cablegram accepting his first proposition he would "remain by the week" to be compensated, etc., defendant's cablegram of January 7th was not an unqualified acceptance of his proposal and did not constitute an employment for 12 months as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 107–127; Dec. Dig. § 80.*]

3. MASTER AND SERVANT (§ 7*)—CONTRACT OF EMPLOYMENT—WAIVER—CORPORATIONS.

Where plaintiff, claiming an annual contract of employment as general manager of defendant corporation, accepted a position as general managing director after being elected to that office, he thereby waived his contract of employment for a year and subjected himself to removal under a by-law of the company authorizing the board of directors to remove a director or officer and fill the vacancy so created at any regular or special meeting.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 7; Dec. Dig. § 7.*]

4. CORPORATIONS (§ 294*)—DIRECTORS—REMOVAL—MEETING OF BOARD.

Where the by-laws of a corporation authorized the removal of an officer or director by a majority of the board at any regular or special meeting, and the minutes showed that, at a special meeting held pursuant to a written call of the president, a resolution was adopted by a majority of the board removing plaintiff as general managing director and appointing another as his successor, such resolution operated to remove plaintiff from office from the date notice thereof was communicated to him.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1263–1266; Dec. Dig. § 294.*]

5. CORPORATIONS (§ 319*)—OFFICERS—REMOVAL ACTION OF BOARD—MINUTES—EVIDENCE.

Where plaintiff claimed that action taken by defendant's board of directors by which he was sought to be removed as general managing di-

rector was illegal, defendant was entitled to introduce in evidence the minutes of a subsequent meeting of the board at which a resolution was adopted by a majority reciting that the directors had lost confidence in plaintiff because of certain letters he had written, and that it was resolved that he be removed from office as managing director and that another be elected in his stead; defendant being entitled to contend that it was justified in discharging plaintiff for misconduct even though he had a contract for a year, as claimed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1415, 1416–1425; Dec. Dig. § 319.*]

Appeal from Trial Term, New York County.

Action by Hazlitt A. Cuppy against Stollwerck Bros., Incorporated. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed on condition.

See, also, 150 App. Div. 903, 135 N. Y. Supp. 1107.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Edward H. Wilson, of New York City, for appellant.
Frederick M. Thompson, of New York City, for respondent.

LAUGHLIN, J. The plaintiff alleges that on the 7th of January, 1910, he was employed as managing director by the defendant for the year 1910 on the basis of an annual salary in addition to expense money and a percentage of the profits; and that he was discharged on the 24th of May thereafter. He brought this action to recover the balance unpaid on the salary for the year and his percentage of the profits.

The trial court ruled, as matter of law, that the evidence proved a contract of employment for the year 1910. The uncontroverted evidence shows that the plaintiff was discharged as alleged, but there was a question of fact as to whether the discharge was justified by his conduct, and with respect to the intention of the parties concerning the manner in which the profits were to be computed, and as to whether the profits were sufficient to entitle the plaintiff under his contract to recover any part thereof or to damages measured thereby. The court submitted those questions to the jury, and the former was determined in his favor and the latter adversely to him, and he recovered nothing on account of profits. In the event of such findings on those issues, the court instructed the jury that they should render a verdict in favor of the plaintiff for salary, the amount of which was not disputed, for the balance of the term, and a verdict therefor was accordingly rendered.

Counsel for the defendant duly excepted to the rulings that the evidence showed a contract of employment for a year not terminable without cause, and that if the discharge was without just cause the plaintiff could recover as damages the amount of the unpaid salary for the term of the employment. These exceptions present the principal points that we deem it necessary to consider.

Prior to the 15th day of December, 1904, the plaintiff was in charge of the business of the Puritan Pure Food Company, a domestic corporation, and he owned all of its capital stock save the shares necessary to

qualify other directors. On the last-mentioned day three agreements in writing were executed by the plaintiff representing his company and by one A. Stollwerck, who was engaged in the business of manufacturing and selling chocolate and confections at Stamford, Conn., and Gebrueder Stollwerck Aktien Gesellschaft, a German corporation which it is recited in the agreements owned a New York corporation known as Stollwerck Bros. The purpose of those agreements, so far as material to the decision of the appeal, was to have a corporation organized to take over the business of said Stollwerck and to manufacture "cocoa and chocolate food products and table luxuries" and to have the products of such corporation sold by the plaintiff's corporation and Stollwerck Bros. on a co-operative basis; the profits to be divided as therein provided. It was expressly agreed that the business of the three companies should be under the "responsible management" of the plaintiff and said Stollwerck "for a period of not less than four years." It would seem that no new corporation was organized at that time, as provided in the agreements, and said Stollwerck continued in charge of the manufacturing business, the products of which were, however, delivered to the other companies for sale and sold as contemplated by the agreements. The business of Stollwerck Bros. was jointly managed by the plaintiff and said Stollwerck, and the plaintiff managed the business conducted by his corporation, and said Stollwerck managed the manufacturing business until October, 1908, when he retired. After the year 1905 the plaintiff had the exclusive management of the business of his own corporation and that of Stollwerck Bros., and after the retirement of said Stollwerck the plaintiff's exclusive management extended to the manufacturing business as well and was so continued until his discharge. In the year 1908 there were negotiations between the plaintiff and the German company for a modification of the contracts; and, according to the testimony of the plaintiff, a proposition was made to him by the German corporation under date of August 15, 1908, which he accepted, and which provided that he and his fellow managing director, Stollwerck in America, should receive a salary of $100 per week and one-half of the net profits of the business, after certain deductions therein specified.

The defendant was incorporated under the laws of Connecticut on the 4th day of November, 1908, and the plaintiff became and remained its treasurer until his discharge. One Ludwig Stollwerck was the first vice president and the principal stockholder of the defendant. He was also the first vice president of the German company, and he appears to have had the general charge and management of both companies. On the 17th of November, 1908, he wrote the plaintiff, drawing attention to the fact that the agreements of December 15, 1904, had terminated, or were about to terminate, and to the fact that the plaintiff had been receiving thereunder "a fee of five thousand" dollars per annum and saying, "We herewith agree to give to you or Mrs. Elizabeth Cuppy, your wife, as long as you are working in our American business, a fee of $5,000" per annum, and further providing that, if the plaintiff quit or left "our firm under any reasons whatever, we agree to pay to you or Mrs. Elizabeth Cuppy a fee of five thousand dollars" per annum,.

and in the event of his death to pay the same to his widow as long as she should live "out of any profits of our New York and Stamford business, before any interests are paid on capital," and to pay a smaller annuity to the plaintiff's mother in the event of the death of the plaintiff and of his wife leaving his mother surviving, and offering in behalf of the German firm to sign a contract in accordance with the terms of his letter; and he assigned as a reason for so doing the former contract, by which he says "all earnings of the Puritan Pure Food Company" were to accrue to Stollwerck Bros., and also the services the plaintiff had rendered "to our American family business." After the receipt of this letter, the plaintiff continued in charge of the business of the two corporations and of the manufacturing business, as sole managing director, without the execution of a formal contract, although it appears that he was desirous of having one, a more formal and definite arrangement. He received the salary of $5,000 per annum, in accordance with said letter, in monthly installments from Germany. Ludwig Stollwerck resided in Germany. He was in this country in September and October, 1909, and by a table of figures outlined a proposal to the plaintiff for a new contract. The plaintiff was subject to the orders of Ludwig Stollwerck, with whom individually most, if not all, of the correspondence concerning the business was conducted. The plaintiff manifested dissatisfaction with being held strictly responsible for the business, and particularly for the manufacturing business, concerning which it seems his authority had been somewhat limited. He wrote Ludwig Stollwerck under date of November 15, 1909, referring to a letter of October 30th, not in the record, setting forth his grievances in regard to being held responsible, although obliged to divide authority, and rebelling against being obliged to carry out instructions from Germany regardless of whether he deemed them for the best interests of the business, and complaining that there had been no definite agreement with respect to his compensation, and manifesting a determination to resign the position, and offering to instruct another to take charge in his place. The receipt of this letter by Ludwig Stollwerck was acknowledged, but he postponed action thereon. In cabling on other business on December 8, 1909, the plaintiff said that he was anxiously awaiting an answer to his letter of November 15th, and in a letter written on the same day he further discussed his grievances and asked that immediate attention be given thereto. On December 16, 1909, he wrote Ludwig Stollwerck a peremptory letter, announcing his intention of severing his connection with the business unless a definite agreement was arrived at without delay, on the basis which he therein proposed, which was as follows:

"Beginning with January 1st, I shall expect to receive, aside from my share of the profits, in addition to the amount which I have been receiving during the past year, $10,000; or at the rate of $10,000 per year over and above the $5,000 which I am now getting and the $1,000 for expense money. Five thousand dollars of the $15,000 will be set aside, as it is paid to me, and returned to Gebruder Stollwerck, A. G. Cologne, in payment of the $5,000 which was loaned me during the year 1907, the first of the two years that I received no remuneration whatever for my work here."

The letter closed with the following:

"In the absence of any cablegram confirming these conditions you will understand, therefore, that I am only here from week to week, but in that case on the basis as above outlined."

It will be observed that this proposition contained no express provision with respect to the period of employment, excepting as it may be inferred from the last paragraph of the letter that the plaintiff contemplated an employment, if his proposition should be accepted, for some period longer than a week, at least.

[1] The acceptance of a proposition for employment at a specified rate per year is not an employment for a year but one merely at will. Martin v. N. Y. Life Ins. Co., 148 N. Y. 117, 42 N. E. 416; Watson v. Gugino, 204 N. Y. 535, 98 N. E. 18, 39 L. R. A. (N. S.) 1090, Ann. Cas. 1913D, 215; Granger v. Am. Brewing Co., 25 Misc. Rep. 701, 55 N. Y. Supp. 695; Wood on Master and Servant (2d Ed.) § 136. On January 3, 1910, the plaintiff cabled in cipher asking for a confirmation of the agreement, in accordance with his letters of December 16th and November 15th, adding, "Twelve months also one authority," and asking for a reply by cable. On January 5, 1910, he received a cablegram, also in cipher, saying:

"We have answered letters 16th of December 31st of December waiting your telegram after its receipt confirm letter 21st December you have authority within certain limits."

He thereupon cabled as follows:

"If you will not agree to abide by the conditions of letters dated 16 December 15 November twelve months I hereby offer my resignation and request its acceptance Monday will so advise trade bankers salesman."

He received a cablegram under date of January 7, 1910, in reply as follows:

"Wish to see you satisfied working with enthusiasm agree to your proposals for twelve months subject to conference according your decision with Ludwig arriving with Franz Kurfuerest 25th January protect our interests as hitherto."

He thereupon, under date of January 8, 1910, cabled in cipher as follows:

"Your telegram to hand remain upon terms of my letter 16th day of December 15 day of November."

He admits that he recognized that Ludwig Stollwerck's cablegram of January 7th was not an *unqualified* acceptance of his proposal for employment on the basis of his letters of December 16th and November 15th for the period of 12 months, as specified in his subsequent cablegram; and that is evidently the reason he cabled that he would remain on the terms of his letter of December 16th.

[2] It cannot be said as matter of law that the legal effect of his last cablegram herein quoted, if acquiesced in, was that he was to remain for a year, because he excluded from his proposition contained in that cablegram his cablegrams subsequent to December 16th, and his letter of December 16th contains two propositions, the latter of which was that, unless he received a cablegram accepting his first proposition therein contained, he would remain *by the week,* to be

compensated, however, on the basis of the salary thereinbefore de-- manded. I am of opinion that the defendant was justified in inferring from the plaintiff's cablegram of January 8th that he was to remain *by the week,* with the expectation, of course, that a satisfactory arrangement would be made after Ludwig Stollwerck arrived in this country. Ludwig Stollwerck did not arrive until the end of January or first of February. He remained until the 10th of March.

[3] There was a special meeting of the board of directors of the defendant held in the city of New York on the 7th day of March, 1910, at which Ludwig Stollwerck and the plaintiff were present, called for the purpose, among others, "of creating the position of general managing director for the corporation and electing a director to serve in that position." The call for the meeting was signed by the plaintiff and others. A resolution was offered and unanimously adopted creat-- ing "the position of general managing director, which office shall carry with it the general supervision and direction of all the affairs of the corporation, subject to the board of directors," and expressly providing that the plaintiff "be, and hereby is, elected to fill this office." The plaintiff interposed no objection to the creation of the new office or to his election thereto. He accepted it by remaining with the company and performing the duties of the office. If there was any question with respect to Ludwig Stollwerck's authority to represent the company, it is removed by the action of the board of directors on that day, by which all acts of officers of the corporation were expressly ratified. If the plaintiff at that time claimed a contract for a year, I am of opinion that he was called upon to assert it, instead of acquiescing, without protest, in the creation of an office which necessarily superseded his functions and accepting it.

By section 4 of article 1 of the by-laws of the defendant, the board of directors was expressly authorized by a majority vote at any regular or special meeting to remove a director or officer and to fill the vacancy so created. On the 24th of May, 1910, the plaintiff was notified in writing by Ludwig Stollwerck, who was then in New York, that at a special meeting of the board of directors of the defendant, held in Cologne on the 28th of April, he had been removed from his position as managing director, in accordance with said section 4 of article 1 of the by-laws, and that the writer of the letter had been appointed general managing director. On the trial the defense was asked to produce the resolution of the board of directors adopted on the 28th of April, purporting to discharge the plaintiff, and on the production of the minutes of that meeting of the board of directors the attorney for the plaintiff offered them in evidence, saying that the meeting was held "pursuant to a written call issued by the president." Thereupon the attorney for the defendant announced that the defense did not stand upon that resolution of dismissal but claimed that the plaintiff was removed and discharged by a resolution of the board of directors of the defendant at a regular monthly meeting duly held in this country on the 6th day of June, 1910. Thereupon the attorney for the plaintiff stated that the plaintiff stood on the resolution of April 28th and insisted on having the minutes of that meeting containing

the resolution received in evidence, and they were so received. The minutes recited the presence of four directors, and that they constituted "a majority of the board," and that a resolution, signed by four of the directors and attested by the vice president and secretary, was duly offered and unanimously adopted reciting that they were a majority of the members of the board of directors, and that their confidence in the plaintiff had been shaken by certain letters which he had written, which indicated to them that he was not carrying on the management of the affairs of the corporation "in a spirit that meets with our approval," and it was resolved that he be removed from his position as managing director, and that Ludwig Stollwerck be appointed and elected as managing director in his place. The defendant attempted to prove a resolution adopted by the board of directors at a regular monthly meeting on the 6th day of June, 1910, removing the plaintiff as managing director, treasurer, and as a member of the board of directors and electing Ludwig Stollwerck managing director and another director treasurer. This was objected to on the ground that it was immaterial and a self-serving declaration, since it was after the plaintiff had been discharged. The court sustained the objection, and the defendant duly excepted. The minutes of the meeting of June 6, 1910, were marked for identification and are printed in the record. There was a long colloquy between the court and counsel concerning their admissibility. The attorney for the plaintiff, while denying the. authority of the board of directors to remove plaintiff, had not expressly questioned the regularity or validity of the meeting of the board of directors of April 28th; but he took the position that the plaintiff was in effect a partner in the business and could not be removed by the board of directors, and he asserted that he had no notice of the meeting, and that there was not a quorum present, although there was no evidence to impeach the recital in the minutes of the presence of a quorum, and the by-laws provided that the number of directors was to be five, and that a majority should constitute a quorum. The attorney for the defendant insisted that it was entitled to have the minutes of the meeting of June 6th in evidence if the plaintiff questioned the validity of the action of the board of directors on April 28th, and the plaintiff persistently objected on the ground that he was discharged on May 24th, pursuant to the resolution of April 28th.

I am of opinion that the court erred in ruling as matter of law that the plaintiff was employed for the entire year 1910. As already observed, the correspondence did not clearly show a meeting of the minds of the parties on the employment of the plaintiff for a year; and, when in those circumstances he acquiesced in the creation of the office of managing director and accepted that office, he waived any right he may then have had to claim an employment for a year, and he accepted employment in an office from which he was subject to be removed.

[4, 5] I am of opinion that the action of the board of directors on April 28th was valid, and that the plaintiff was removed when notice thereof was communicated to him on the 24th day of May thereafter; but, since upon the trial there appears to have been some

question with respect to the validity of that action of ·the board. of directors and the defendant did not rely thereon, the court clearly erred in excluding the minutes of the meeting held on June 6th. The defendant had a right to contend that it was justified in discharging plaintiff for misconduct,. even .if he had a contract for a year, and it was proper for it also to contend that plaintiff had been duly removed from office pursuant to the by-laws.

It appears that the plaintiff received his salary for the first four months of 1910. He is therefore entitled to recover; but at most he was only to be entitled to salary from the end of April to and including the 6th of June.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event, unless the plaintiff shall stipulate to reduce the recovery to the sum of $1,-520.33, being his salary from the 30th day of April to and including the 6th of June, together with interest thereon from June 6, 1910, and, if he shall so stipulate, the judgment is reduced accordingly and affirmed, without costs. All· concur.